**GTE SOUTHWEST INCORPORATED,**
Appellant,

v.

**PUBLIC UTILITY COMMISSION OF TEXAS, Appellee.**

No. 03–00–00551–CV.

Court of Appeals of Texas,
Austin.

Feb. 15, 2001.

Rehearing Overruled March 15, 2001.

Amanda Atkinson Cagle, Asst. Atty. Gen., Austin, for appellee.

Celina Romero, Clark, Thomas & Winters, Austin, for appellant.

Before Justices KIDD, B.A. SMITH and PURYEAR.

BEA ANN SMITH, Justice.

GTE Southwest Incorporated (GTE) sought judicial review of a final order issued by the Public Utility Commission. MCI Communications Corporation (successor to MFS Communications, Inc.) and MCI WorldCom Communications, Inc. (successor to WorldCom Technologies, Inc.) intervened in the suit to defend the order.[1] GTE appeals from a trial-court

---

1. To be consistent with the pleadings filed before the Commission and the district court, we will refer to appellant as GTE and to interveners collectively as MFS. In fact, all corporate names have changed since the proceedings before the Commission began. GTE has begun to do business as Verizon Southwest. MFS Communications Company, Inc.,

judgment that affirms the order. We vacate the trial court's holding that GTE is aggrieved by the Commission's order and dismiss the suit for judicial review.

## THE CONTROVERSY

The underlying dispute concerns an interconnection agreement between GTE, an incumbent local telephone exchange company, and MFS, a new entrant in the local exchange telecommunications market. Such agreements are crucial for new entrants to compete in the local telephone market. Both federal and state laws have been enacted to promote competition in local telephone markets and to require interconnection and procedures for negotiating and enforcing such agreements. *See* Federal Telecommunications Act (FTA) of 1996, 47 U.S.C. §§ 251–53 (Supp.2000); Public Utility Regulatory Act (PURA), Tex. Util.Code Ann., §§ 60.121–.128 (West 1998).

In September 1996, GTE and MFS entered into an interim interconnection agreement. The agreement contemplated a final agreement, but at the time of this dispute one has not been executed. Furthermore, the parties did not comply with the federal procedures set forth in the FTA when they inadvertently failed to seek the Commission's approval of their interim agreement. *See* 47 U.S.C. § 252(e). This, however, did not prevent them from successfully operating under the agreement for three years. But when a dispute over terms of the agreement arose, this failure to seek Commission approval became problematic.

In May 1999, MFS filed its first complaint with the Commission in Docket No. 20870, alleging that GTE had breached the interim agreement by failing to comply with reciprocal compensation provisions for terminating local traffic.[2] The Commission dismissed the complaint without prejudice, ruling that it lacked jurisdiction to consider a dispute arising under an agreement that it had not approved. *See* Tex. Pub. Util. Comm'n, *Arbitration Award (Dismissing Complaint)*, Docket No. 20870 (June 18, 1999).

In July 1999, MFS initiated a second proceeding in Docket No. 21088, seeking the Commission's approval of the interconnection agreement after the fact, presumably so the Commission could then assert its jurisdiction to resolve the parties' contractual dispute. GTE refused to join in the application for approval, saying the agreement was no longer in the public interest. GTE asked the Commission to dismiss MFS's application on the grounds that GTE's joinder was necessary before the Commission could approve the agreement. The administrative law judge certified this question to the Commission: Can the Commission approve an agreement, even if a signatory party does not support its approval?

The Commission considered the unique circumstances of the dispute: an agreement that was supported by both parties when it was signed; an agreement that was intended to govern the parties' dealings for a short time until a final agreement was reached but that had in fact been in effect for three years; and the parties' inadvertent failure to seek the Commission's approval for the agreement (it "fell between the proverbial cracks"[3]).

---

which was a party to the proceedings in Docket No. 21088, and WorldCom Technologies, Inc., which also appeared in Docket Nos. 20870 and 21706, have subsequently changed their names to those indicated above; the parent company of both interveners remains WorldCom, Inc.

2. Because this contract dispute is not before us in this appeal, we will not further discuss the details of the parties' disagreement. That

dispute is the subject of the Commission's final order in Docket No. 21706, which has been appealed to the district court and may eventually reach this Court for review.

3. Tex. Pub. Util. Comm'n, *Order on Certified Issue*, Docket No. 21088 (Oct. 28, 1999) (citing Affidavit of Joseph A. Lazzara, GTE consultant responsible for negotiating the interim agreement in the summer of 1996).

The Commission then declined to answer the certified issue and reversed its earlier decision in Docket No. 20870 that it lacked jurisdiction to settle this dispute. Referring to the unique facts outlined above, the Commission found that although the parties had failed to comply with the FTA's requirement that the Commission approve the interim agreement, the Commission nevertheless had jurisdiction to resolve the dispute under state law because PURA does not require the Commission's prior approval of the agreement to vest the Commission with authority to review these agreements. The Commission then entered its final order in Docket No. 21088, dismissing as moot MFS's application for approval of the interim agreement. *See* Tex. Pub. Util. Comm'n, *Order*, Docket No. 21088 (Jan. 13, 2000). It is from that order that GTE brought its suit for judicial review.

Subsequently, MFS filed a third complaint in Docket No. 21706 seeking the reciprocal compensation it claimed for termination of internet service provider calls under the interim agreement. In December 2000, the Commission awarded MFS approximately $10 million in compensation under the interim agreement. GTE has filed suit in district court for judicial review of that order in Docket No. 21706. That contractual dispute, including the issue of the Commission's authority to hear the dispute under state law, is not before us today.

This cause concerns only the dismissal of MFS's application for approval of the interim agreement. We hold that because the Commission granted the relief that GTE sought by dismissing MFS's application, GTE is not an aggrieved party and is thus not entitled to seek judicial review of the Commission's final order in Docket No. 21088.

## AGGRIEVED PARTY

The Administrative Procedure Act (APA) grants judicial review of an agency decision to a party "who has exhausted all administrative remedies available within a state agency and *who is aggrieved by a final decision*" of the agency. Tex. Gov't Code Ann. § 2001.171 (West 2000) (emphasis added). This Court has previously held that one must be aggrieved by the final order and not merely by an underlying finding or conclusion to have standing to seek judicial review of that order. *See Champlin Exploration, Inc. v. Railroad Comm'n*, 627 S.W.2d 250, 252 (Tex.App.—Austin 1982, writ ref'd n.r.e.). In that decision, we rejected Champlin's attempt to "maintain an appeal in this Court for the sole purpose of striking findings and conclusions with which it does not agree." *Id.* Subsequently, we followed this ruling in *C.O.N.T.R.O.L. v. Sentry Envtl., L.P.*, 916 S.W.2d 677, 679 (Tex.App.—Austin 1996, writ denied), holding that an appellant who prevailed in getting the agency to deny an application for a solid-waste permit was not "aggrieved" because the agency chose to deny the permit on a ground different than the one appellant had urged. "[A]ppellants' substantial rights do not include the right to mold an agency determination such that it will better thwart future permit applications...." *Id.* at 679–80. We are unable to distinguish GTE's status as an aggrieved party from that of the appellants in *Champlin* and *C.O.N.T.R.O.L.*

GTE asked the Commission to deny MFS's application for approval of the interim agreement on the ground that it was no longer consistent with the public interest, convenience, and necessity. GTE insisted that the Commission could not approve the agreement unless both parties supported the application. The hearings officer certified this issue to the Commission. Rather than answer the certified issue, the Commission determined that it had jurisdiction under state law over the dispute between MFS and GTE, mooting the certified issue by making approval of the agreement under federal law unnecessary. Tex. Pub. Util. Comm'n, *Order on*

*Certified Issue,* Docket No. 21088 (Oct. 28, 1999).

The order on certified issue is not a final order. It is in the nature of a conclusion of law supporting the Commission's final order; indeed, it is set forth as a conclusion of law in that order.

The final order in Docket No. 21088 reads as follows:

> This Order dismisses the application of MFS Communications Company for approval of an interim co-carrier agreement. The docket was processed in accordance with applicable statutes and Commission rules. The Commission issued an order on certified issue which effectively eliminated the need to address the remaining issues in this docket. The application, consistent with the order on certified issue, is dismissed.

Conclusion of Law No. 2 states, "The Commission has jurisdiction and authority over this application pursuant to PURA §§ 14.001, 52.002(a), and 60.122." Conclusion of Law No. 4 holds that MFS's application for approval of the interim agreement is moot and should be dismissed. It is these two conclusions of law that GTE seeks to challenge in its suit for judicial review, not the final order dismissing the application. But like the would-be appellants in *Champlin* and *C.O.N.T.R.O.L.,* GTE is not aggrieved as that term is used in APA section 2001.171.[4] The district court erred in holding that GTE is an aggrieved party under the APA.

GTE sought to have MFS's application for approval dismissed on one ground; the Commission dismissed it on another ground. Under our holdings in *Champlin* and *C.O.N.T.R.O.L.,* GTE may only bring a suit for judicial review to challenge the final order of the Commission, not its underlying conclusions of law.[5] We vacate the district court's judgment and dismiss the suit for want of jurisdiction.

## CONCLUSION

Because the Commission granted the relief sought by GTE, GTE is not an aggrieved party entitled to seek judicial review of the Commission's decision in this docket. We therefore vacate the district court judgment and dismiss the suit for want of jurisdiction.

---

4. GTE asserts that it is also an aggrieved party because the dismissal essentially determined the rights, status, and other legal relations of GTE and MFS under the interim agreement. Any interpretation of the agreement, however, arises out of the jurisdictional question which is not before us.

5. Whether the Commission properly asserted its authority to resolve this dispute under state law may be challenged in the suit for judicial review of Docket No. 21706 now pending in the district court. GTE claims that such a jurisdictional challenge would present the "odd result" of a remand to the Commission to consider jurisdiction because it failed to do so in Docket No. 21706. At oral argument, however, the Commission confirmed that this question is squarely before the district court in Docket No. 21706 and need not be remanded to the Commission to determine for a third time whether it has jurisdiction. GTE also seems to assert that it may never receive an answer to the certified issue propounded to the Commission unless we address in this docket the Commission's authority to settle the dispute under state law. GTE is not entitled to have the Commission or this Court answer a moot question. Because the order in this docket merely dismissed the application for approval, and GTE does not complain about that dismissal, it may not seek an advisory opinion to attack the ground on which the Commission rested its dismissal.